**UNITED STATES DISFTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK LINGENFELTER , <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br><br> Defendants | 3:14-CV-00202-MMD-VPC <br><br><br> **REPORT AND RECOMMENDATION** <br> **OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal or remand (#12), defendant's cross-motion to affirm and opposition (#13/14), and plaintiff's opposition and reply (#15/16). For the reasons set forth herein, the court recommends that plaintiff's motion to remand be granted, and defendant's cross-motion be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2011, Mark Lingenfelter ("plaintiff") filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. (Administrative Record ("AR") 24.) Plaintiff alleged his disability commenced on April 29, 2011. (*Id.*) The Social Security Administration denied plaintiff's application in the first instance on January 6, 2012, and also upon reconsideration, on May 8, 2012. (*Id.*) On January 8, 2013, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison. (*Id.* at 24-32.) The ALJ issued a written decision on February 7, 2013, finding that plaintiff had "not been disabled" at any time

-1-

between April 29, 2011 and the decision date. (*Id*. at 24.) Plaintiff appealed, and the Appeals Council denied review on March 18, 2014. (*Id*. at 1-3.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

On April 15, 2014, plaintiff filed through counsel a complaint for judicial review (#3). In his motion for remand or reversal (#12), plaintiff argues that the ALJ erred in three respects: first, she incorrectly evaluated plaintiff's past relevant work; second, she mistakenly concluded that plaintiff had transferable skills at step five; and third, she failed to provide legally sufficient reasons for disregarding postural limitations found by one of the physicians who examined plaintiff. (*Id*. at 11.) Defendant's cross-motion disputes these contentions of error, and also argues that, to the extent the ALJ did err in her evaluation of the postural limitations, the error was harmless. (#13/14 at 3-4, 4-5, 5-8.)

## II.     STANDARD OF REVIEW

The burden of proving disability in a claim for SSDI payments rests upon the claimant. 20 C.F.R. § 416.912(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision denying a claim for SSDI payments after the plaintiff has exhausted administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citations omitted); *see also* 42 U.S.C. § 405(g)

("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (citation and quotation omitted). Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation omitted). The ALJ's discussion must adequately explain the decision in light of such evidence: "the ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence,]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony) and the district court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In reviewing for substantial evidence, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

## III.   DISCUSSION

**A.   SSDI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id*. § 404.1520(b). The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id*. § 404.1520(a)(4)(ii) "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id*. § 404.1520(c). The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe combination thereof. *Id*. In step three, the claimant's impairment is compared to the Agency's impairment list. *Id*. § 404.1520(a)(4)(iii); *see also id*. § 404, Subpt. P, App. 1 ("Listed Impairments"). Where the claimant's impairment is on the list, or is equivalent to any impairment therein, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. *Id*. § 404.1520(d).

If the Commissioner does not find disability at step three, review of the claim proceeds to the fourth step: whether the claimant can perform past relevant work. *Id*. § 404.1520(a)(4)(iv). The claimant is not disabled where he or she can engage in such work. *Id*. § 404.1520(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

In making the step four determination, the ALJ considers the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 404.1545(a).

When evaluating a claimant's RFC, the ALJ is not required to believe every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). The ALJ must follow a two-part inquiry where the plaintiff alleges that the disability results from excessive limitations or pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that reasonably can be expected to produce the alleged symptoms. *Lingenfelter*, 504 F.3d at 1036. Second, where no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014), and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding). The focus, however, is ultimately upon the reviewing court: the credibility determination must be "sufficiently

specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, and lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor the ALJ can consider in [her] credibility analysis."). Medical opinions are also probative evidence when determining credibility of subjective complaints. 20 C.F.R. §§ 404.1529(c); *Rollins*, 261 F.3d at 857.

If the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. *Id*. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. At step five, the ALJ typically references "the grids," under which a finding of disability may be directed, and also considers the testimony of a vocational expert. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow his or her performance of

other occupations, he or she is not disabled. 20 C.F.R. § 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is entitled to benefits. *Id*. § 404.1520(g).

**B.      The ALJ followed the five-step process and concluded plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. (AR 25-26.) The ALJ determined that plaintiff has not engaged in substantial gainful activity since April 29, 2011, the alleged onset date, and has degenerative disc disease, a severe impairments under the applicable regulations. (*Id*. at 26.) In contrast, the ALJ concluded that, in light of minimal or adequate treatment, plaintiff's allergic rhinitis, hypertension, hypothyroidism, status post-surgery for renal lithiasis, and status post appendectomy do not significantly limit his ability to perform basic work activities and, therefore, are not severe impairments. (*Id*. at 27.) With respect to the degenerative disc disease, the ALJ concluded that this impairment did not meet or medically equal the severity of a listed impairment in the relevant subpart of the regulations; therefore, a finding of disability was not directed at step three. (*Id*.)

The ALJ proceeded to step four and made several findings. First, the ALJ concluded that plaintiff's RFC permits medium work with the following additional restrictions: plaintiff must avoid hazards, including working at heights. (*Id*.) Second, the ALJ held that plaintiff's statements regarding the intensity and limiting nature of his impairments were consistent with a reduced capacity for work, but were not credible to the extent of disability. (*Id*. at 27-28.) She reviewed and discussed several medical opinions, and she divined from her assessment thereof that the opinions suggesting greater limitations lacked the support of objective findings or, in the case of plaintiff's chiropractor, were not given by an acceptable medical source. (*See id*. at 28-29.) In particular, she assigned "most weight" to the opinion of Dr. Richard Cestkowski ("Cestkowski"), a consultative examiner, who opined that "the claimant could perform medium exertional work with at least

occasional postural activities and an avoidance of temperature extremes, chemicals[,] and dust." (*Id*. at 29.) However, the ALJ found that "the record does not support additional environmental restrictions suggested . . ." by Cestkowski. (*Id*.) Third, the ALJ concluded on the basis of the record that plaintiff was capable of performing his past relevant work of "returns clerk." (*Id*. at 29-30.) Thus, the ALJ concluded at step four that plaintiff is not disabled. (*Id*.)

The ALJ also proceeded to step five to make alternative findings. The ALJ found that plaintiff was "not disabled" under the grids, in light of his age, education, and transferable work skills. (*Id*. at 31.) Further, the ALJ relied up the hearing testimony of the Vocational Expert ("VE"), which stated that three jobs existed in a significant number in the national economy that plaintiff could perform, two of which had light exertional levels, and one of which was sedentary: sales clerk, of which there are 358,000 jobs nationally; procurement clerk, of which there are 70,000 jobs nationally; and cashier, of which there are 523,000 jobs nationally. (*Id*.) Because plaintiff could perform these jobs due to the his transferable customer service skills, the ALJ held that plaintiff was not disabled and denied his SSDI claim. (*Id*.)

## C.    The ALJ erred in her step-four evaluation of past relevant work.

Plaintiff first challenges the ALJ's evaluation of his past relevant work experience at step four. (#12 at 12-15.) Specifically, plaintiff contends that the record demonstrates that his past work was a "composite" job—that is, a position comprised of several separate positions listed in the *Dictionary of Occupational Titles* ("DOT"). Accordingly, the ALJ erred by finding that his RFC allows him to perform past relevant work, since she found only that he can perform one aspect of the composite job—namely, the "returns clerk" position. In contrast, defendant argues that substantial evidence supports the ALJ's determination that plaintiff could perform the returns clerk position. The court agrees with plaintiff.

As this court recently recognized, ALJs within the Ninth Circuit must refrain from classifying an applicant's past relevant work according to its least demanding function. *Ferguson v. Colvin*, No. 3:13-CV-00262-RCJ-VPC, 2014 WL 1382523, at *7 (D. Nev. Apr. 3, 2014) (citing *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985)); *see also Carmickle v. Comm'r, Soc. Sec. Admin.* 533 F.3d 1155, 1166 (9th Cir. 2008). The rule is applicable when the ALJ reviews the past work of claimants who previously held composite jobs, which by their nature lack counterparts in the DOT. *See* Social Security Ruling ("SSR") 82-61. Under SSR 82-61, composite jobs are to be "evaluated according to the particular facts of each individual case[,]" and the ALJ should generally afford a highly probative view of the claimant's own description of the work, *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). *See also* SSR 82–62 ("the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of such work").

Under the Agency's pertinent interpretive guidance, the ALJ is not to utilize the DOT to conclude a plaintiff can perform a past relevant composite job, since those jobs are, given their specialized nature, not "generally performed" as contemplated by the applicable rules and regulations. ALJs are to "find the claimant capable of performing the composite job [at step four] only if he or she can perform *all parts of the job*. A composite job will not have a DOT counterpart, so [ALJs shall] not evaluate [the job] at the part of step 4 consider work 'as generally performed in the national economy'." Social Security Administration, *Program Operations Manual System DI* § 25005.020(B); *Warre v. Comm'r of Soc. Sec. Admin*, 439 F.3d 1001, 1005 (9th Cir. 2006 ("The POMS does not have the force of law, but it is persuasive authority."). In sum, even where a portion of a claimant's past composite work encompasses a particular position identified in the DOT, a

claimant cannot return to past relevant work where he or she did not "exclusively work[]" in that particular occupation. *Vertigan v. Halter*, 260 F.3d 1044, 1051-52 (9th Cir. 2001). Stated differently, the claimant's ability to return to only one aspect of his composite job does not support a finding of non-disability at step four.

The ALJ's step four finding erred in this exact manner. As the ALJ recognized, each of the three positions plaintiff performed was in a "warehouse capacity." (AR 56.) Plaintiff held only one job in the relevant time period, "Senior Warehouser," as absolutely reflected by his work history report and earning statements. (*Id.* at 166-68, 181, 210). In her hearing testimony, the VE appeared to recognize and communicate that the position was, indeed, a composite one. (*Id.* at 59-60) (characterizing plaintiff's position as a "hybrid job[]"). Moreover, applicable case law and regulations establish that the ALJ should have evaluated plaintiff's work as a composite job under the record available to her, whether or not the VE clearly communicated that fact. *See Farias v. Colvin*, 519 Fed. App'x 439, 440 (9th Cir. 2013) (observing that the ALJ erred by failing to verify that the VE's testimony was free of error).

In her decision, however, the ALJ stated that the VE had characterized plaintiff's past relevant work as three separate positions: forklift operator, stock clerk, and returns clerk (AR 30)—even though the VE conceded that the job was a "hybrid" position (*Id.* at 59-60). The ALJ further explained that she had posed a hypothetical to the VE at the hearing, and that the VE had testified that such an individual would be able to perform plaintiff's past relevant work of "returns clerk." (*Id.* at 30.) Yet at the hearing, the VE also expressly disclaimed that the hypothetical individual could perform the forklift operation and stock clerk positions, which were both uncontroverted aspects of plaintiff's composite job. (*Id.* at 58.) Therefore, the ALJ conclusion that plaintiff was not disabled at step four, on the basis of his ability to perform the returns clerk aspects of his

position, is unmistakable error.  Plaintiff never held the position of "returns clerk" alone.  *Vertigan*, 260 F.3d at 1051-52.  Although it is entirely possible that plaintiff's RFC and transferable skills would permit him to perform a returns clerk position as ordinarily performed in the national economy, that question is properly considered only at step five.  *See Valencia*, 751 F.2d at 1086-87.  Because plaintiff was unable to perform his composite job under the limitations found by the ALJ, the step four finding was in error.

### D. The ALJ erred at step five when finding that plaintiff has transferable customer service skills that allow him to perform work available in the national economy.

Plaintiff next argues that ALJ erred by concluding that his transferable customer service skills permit him to perform the three occupations identified by the ALJ in step five.  In particular, plaintiff argues that the VE did not find plaintiff had such skills from his past work and, even if she had, the conclusion would be in error because the "returns clerk" position from which she could have found it does not reference any customer service tasks or responsibilities.  (#12 at 16-19.)  Defendant states that the full context of the VE's remarks suggest that she did, in fact, find transferable customer service skills, and further, the VE was not limited to the DOT description, upon which plaintiff's argument heavily relies, when determining which transferable skills plaintiff acquired from his past relevant work.  (#13 at 5-6.)  The court concludes that the ALJ erred.

As a preliminary matter, defendant is correct that the VE found plaintiff possessed customer service skills from his past relevant work of returns clerk—or, more accurately, from that aspect of his composite position.  (*See* AR 58.)  The VE stated that such skills allowed him to perform the sales clerk, procurement clerk, and cashier positions.  (*Id.* at 59.)  Upon examination by plaintiff's counsel, the VE maintained that the skills would allow him to perform the sales clerk job, but not the procurement clerk position.  (*Id.* at 61.)

Yet the VE's testimony as to the customer services skills was in plain conflict with the DOT. "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, *the adjudicator must elicit a reasonable explanation for the conflict* before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p (emphasis added). Under the DOT's description of the returns clerk position, little—if any—job responsibilities or tasks suggest that an individual holding such a position would acquire customer service skills. *See* "Returns-to-Factory Clerk" 209.587-042, Dictionary of Occupational Titles Vol. I, U.S. Dep't of Lab. Emp't and Training Admin. (4th ed. 1991) (omitting any reference to customer service or interacting with customers). Accordingly, a conflict arose: the VE testified to the presence of transferable skills that, under the DOT's description, one would not reasonably infer are part of the position.

Despite this discrepancy, the ALJ failed to expressly discuss and resolve the issue prior to accepting the VE's conclusion that plaintiff acquired transferable customer skills. Defendant argues, correctly, that a VE is not limited to the text of the DOT; the occupational expertise of the VE generally provides adequate foundation for her testimony. *See* SSR-04p (VE "may be able to provide more specific information about jobs or occupations than the DOT."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."). But the expertise the VE possessed does not relieve the ALJ of her obligations to elicit a discussion at the hearing. When a conflict arises, the ALJ is obligated to inquire into and resolve it.

Even if the VE correctly testified as to plaintiff's transferable skills, the ALJ's failure to expressly resolve the conflict was not harmless. First, the VE concluded that the stock clerk aspects

of plaintiff's jobs were his primary duties as a Senior Warehouse, and the VE later noted that the stock clerk position did not provide transferable customer service skills. (AR 61.) Thus, there is reasonable basis to believe that plaintiff's position likely did not provide customer service skills, since the aspect of his job from which those skills could have arisen constituted only a small portion of his overall duties. Second, and relatedly, the level of customer service skills required by the sales clerk position may have exceeded that which plaintiff might have acquired. "[A]n individual cannot transfer skills . . . to work involving a greater level of skill than the work from which the individual acquired those skills." SSR 00-4p (citing SSR 82-41). Because the ALJ did not inquire into and resolve the conflict, and because the circumstances of this case make clear that the error could have led to an incorrect conclusion as to plaintiff's transferable skills, the error was not harmless and plaintiff's motion for remand is meritorious.

E.  **The ALJ failed to provide legally sufficient justifications for rejecting Cestkowski's postural limitations, and the court concludes that remand for further proceedings is warranted.**

Plaintiff finally argues that the ALJ failed to provide a legally sufficient reason for rejecting the postural limitations of Cestkowski's opinion, to which the ALJ generally afforded the "most weight." (#12 at 19-21; AR 29.) Although the court would otherwise deem this argument moot, given its above findings of error, plaintiff's contends that the ALJ's failure as to Cestkowski's opinion, when combined with medical-vocational rules applicable to plaintiff, demand a finding of disability by this court under *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (articulating a three part test under which federal courts should remand for an award of benefits). Defendant responds that substantial evidence supports the ALJ's rejection of Cestkowski's postural limitations opinion, and although defendant does not identify this evidence, she further articulates that any error in the ALJ's failure to address the postural limitations was harmless. (#13 at 6-8.) The court agrees

with plaintiff that the ALJ erred and further concludes that the error was not harmless. However, under the facts of this case, remand for an award of benefits is unwarranted. The court, therefore, recommends remand to the ALJ for further proceedings consistent with this opinion.

**1.     The ALJ failed to provide a legally sufficient reason for rejecting Cestkowski's postural limitations opinion.**

An ALJ may encounter three types of medical opinions in the administrative record: treating, examining, and nonexamining. Each type receives different weight in the ALJ's review. *Garrison*, 759 F.3d at 1012. Generally, opinions from examining providers receive greater weight than those from nonexamining providers, and among examining providers, the ALJ is to accord greatest weight to the treating physician. *Id*. Opinions of treating physicians are particularly persuasive because the continuity of care enhances their abilities to fully and accurately assess the claimant's medical problems. *Embrey v. Bowen*, 949 F.2d 418, 421-22 (9th Cir. 1988).

This is not to say, however, that the ALJ is bound by the conclusions of any particular medical provider. Although the ALJ must articulate "clear and convincing" reasons for disregarding a treating physician's uncontradicted opinion, *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008), she may reject a treating physician's opinion as long as she states specific and legitimate reasons that have support of substantial evidence. *Garrison*, 759 F.3d at 1012. An ALJ provides specific and legitimate reasons by articulating a detailed and thorough summary of facts and conflicting medical evidence, stating her interpretation thereof, and making findings. *Id.* Only when the ALJ fails to sufficiently explain why her conclusions are correct will the contradicted opinion of the claimant's doctor control. *See, e.g.*, *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). In supporting a decision to accept certain medical opinions over others, the ALJ may cite contradiction, inconsistency with the evidence, and consistency of the accepted opinions with the administrative record as a whole. *See Tommasetti v. Astrue*, 533 F.3d

1035, 1041 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

In this case, the ALJ articulated no reason whatsoever for rejecting the postural limitations. (*See* AR 29.) Indeed, the postural limitations are entirely unmentioned in her findings paragraph. (*See id.*) Although the court can certainly surmise sufficient reasons for which the ALJ may have rejected Cestkowski's opinion, and although the substantial evidence standard of review is deferential, the ALJ has a minimal obligation to state at least some specific and legitimate reasons that have evidentiary support. *See Garrison*, 759 F.3d at 1012. Having failed to do so, the ALJ erred in her rejection of Cestkowski's opinion as to the postural limitations.

## 2. The ALJ's error was not harmless.

Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the court must exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Only where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination is the ALJ's error is harmless. *Robbins*, 466 F.3d at 885.

Plaintiff avers that, in light of Cestkowski's postural limitations, all positions within the medium occupational base are beyond the claimant's medium RFC under SSR 85-15. (#12 at 20.) Further, a claimant of plaintiff's age and educational background without transferable skills, who also cannot perform jobs of the medium occupational basis, "grids" to disabled status under Medical-Vocational Rule 202.06. On its face, then, the failure of the ALJ to address Cestkowski's

postural limitations was harmful, for had the ALJ specifically addressed and accepted them, plaintiff's claim for benefits should have been granted.  Defendants contend the error was harmless.

The ALJ's failure to address Cestkowski's postural limitations opinion was not harmless. The court believes the basis for defendant' harmless error argument is that, as she correctly notes, the jobs identified by the ALJ in step five were in the light or sedentary range.  (#13 at 7.)  This renders SSR 85-15 "inapplicable on its face" because by its terms, it applies only to jobs at or above the medium RFC range.  (*Id*.)  Moreover, Rule 202.06 is not applicable because plaintiff has transferable skills.  (*Id*. at 8.)  However, the argument overlooks that plaintiff cites SSR 85-15 precisely because it suggests all jobs other than sedentary and light occupations are unavailable to plaintiff under the limitations opined by Cestkowski; thus, if plaintiff has no transferable skills, he qualifies to grid under Rule 202.06.  Defendant assumes that plaintiff does indeed have transferable skills—a finding that, as the court explained, was in error.  Because plaintiff would indeed grid to disability if Cestkowski's limitations are credited and if he has no transferable skills, the ALJ's failure to sufficiently reject the opinion was not harmless.

**3.     Remand for further proceedings is appropriate in this case.**

As the Ninth Circuit has explained, federal courts "'have discretion to remand a case either for additional evidence and findings or to award benefits.'"  *Brewes*, 682 F.3d at 1164 (quoting *Smolen*, 80 F.3d at 1292).  Where further administrative proceedings can cure the defects in the original proceeding, remanding for further proceedings is the appropriate remedy.  *Garrison*, 759 F.3d at 1019.  Only where "'further administrative proceedings would serve no useful purpose'" do courts properly remand for an award of benefits.  *Brewes*, 682 F.3d at 1164 (quoting *Smolen*, 80 F.3d at 1292).  Remand for such an award should be made where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence or commits some other reversible error; (2) there are no

outstanding issues that must be resolved before a determination of disability can be made; and (3) the record makes clear that the ALJ would be required to find the claimant disabled were such evidence credited or error absent. *See Smolen*, 80 F.3d at 1273.

The court concludes that remand for further proceedings is appropriate. As noted, although the ALJ failed to properly inquire into the discrepancy between the DOT and the VE's testimony as to plaintiff's transferable skills, it is entirely possible that the VE's finding is not erroneous. If so, plaintiff may indeed be able to perform one or more of the positions identified by the ALJ in step five. Alternatively, a more careful analysis of plaintiff's composite job may lead the ALJ to conclude that plaintiff possesses other transferable skills that could allow his performance of other jobs at step five. In particular, the court notes that the VE suggested that plaintiff has a transferable skill of "stock checking," and this may be relevant to positions the ALJ identified. (*See* AR 59.) In light of the record, the court cannot confidently conclude from the record that there are "no outstanding issues" as to plaintiff's transferable skills, such that he is indisputably eligible to grid to disability under Medical-Vocational Rule 202.06. *Compare Lingenfelter*, 504 F.3d at 1041 (finding remand for an award of benefits only where the excluded testimony dispositively excluded any and all occupations, thereby rendering plaintiff disabled at step five). Because further proceedings would serve a useful purpose in this case, remand for further proceedings is appropriate. *Garrison*, 759 F.3d at 1019.

## IV. CONCLUSION

The court concludes that substantial evidence in the record does not support the ALJ's determination of nondisability. The ALJ erred with respect to her evaluation of plaintiff's past relevant work, her conclusion that plaintiff has transferable customer service skills, and her rejection of Cestkowski's postural limitations findings. Because the errors are not harmless, and because

-17-

further proceedings can rectify these errors, the court concludes that remand is appropriate. On that basis, the court recommends that plaintiff's motion for remand (#12) be granted and that defendant's cross-motion to affirm (#13) be denied.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#12) be **GRANTED** and defendant's cross-motion to affirm (#13) be **DENIED**.

**DATED:** February 2, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**